IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES *ex rel*
MATTHEW MACDOWELL,

Plaintiff,

v.

SYNNEX CORPORATION,

Defendant.

No. C 19-00173 WHA

**ORDER RE MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

## INTRODUCTION

In this False Claims Act action, *qui tam* relator moves for leave to file a fourth amended complaint. To the extent stated below, the motion is **GRANTED**.

## STATEMENT

Previous orders have explained this case. In short, defendant Synnex Corporation sells office products to the federal government. In 1980, defendant entered into a contract with the government for the sale of electric power-supply products. The contract incorporated the Trade Agreements Act which necessitated end products sold to the United States Government be manufactured in certain countries. In 2006, Synnex entered into a contract with Huawei Technologies Co., Ltd., a Chinese technology corporation, to sell technology components in the United States. As a result of the agreement, Synnex imported products from APC by Schneider Electric (formerly known as American Power Conversion Corporation), which contained Huawei-manufactured parts. The complaint alleges Synnex offered for sale and sold power-

supply products to the government under the MAS 70 contract knowing that they contained parts from APC that were manufactured in TAA noncompliant countries (Compl. ¶¶ 2, 6, 9, 43, 45).

Relator Matthew MacDowell filed the instant action in August 2012 in the United States District Court for the District of Columbia, followed by an amended complaint in February 2014 and a second amended complaint in January 2017, all under seal. During this time, various extensions of time allowed the United States to consider whether to intervene. A transfer sent the action to the United States District Court for the Northern District of California in January 2019. The government successfully moved to unseal the complaint in February 2019, but declined to intervene. Relators then filed a public third amended complaint in April 2019, alleging violations of the False Claim Act. Defendant moved to dismiss the complaint. A September 2019 order granted the motion and allowed relator to seek leave to amend (Dkt. Nos. 1, 15, 44, 58, 69, 94, 114). Relator now moves for leave to file a fourth amended complaint. Defendant opposes.

**ANALYSIS**

Relator seeks to add detailed allegations regarding the TAA noncompliant products sold to the government. FRCP 15(a)(2) permits a party to amend its pleading with the court's leave, stating that "[t]he court should freely give leave when justice so requires." In the FRCP 15 context, our court of appeals has instructed that "[f]ive factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). These factors weigh in favor of granting leave here.

    1.   **PARTICULARITY OF PLEADING.**

To allege a False Claims Act claim for relief, there must be a "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States v. Safran Grp., S.A.*, No. 15- CV-00746-LHK, 2017 WL 3670792, at *9 (N.D. Cal. Aug. 25, 2017) (Judge Koh).

Furthermore, because the complaint alleges fraud, it is subject to a heightened pleading standard under FRCP 9(b) which requires "a party [to] state with particularity the circumstances constituting fraud or mistake." To demonstrate sufficient particularity under FRCP 9(b), plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, the order granting defendant's motion to dismiss all of relator's claims did so on the ground that the complaint did not plead with adequate particularity that defendant had sold products and parts to the government that were TAA noncompliant. Specifically, relator did not adequately allege which noncompliant products from the offer to sale lists were sold to the government, when they were sold, who specifically sold them, and how they did so. Relator has now pled these details with sufficient particularity.

The fourth amended complaint provides import records from 2011, records of shipments (and corresponding shipment dates) to Synnex from Asian countries in 2014 and 2015, the types of APC parts routinely included in shipments from the 2014 and 2015 records, and the types of products that were sold to the government, but allegedly misrepresented as originating from the United States.

Defendant argues that of the hundreds of shipment details relator has provided from 2014 and 2015, only four shipments at most originated in TAA noncompliant countries, and that importantly, the shipments alleged to have originated in China from the list actually originated in Taiwan, a TAA-compliant country. Although it is true that most of foreign ports of lading listed in the complaint are in Taiwan, in closely examining the shipping details as well as the export numbers, it is adequately pled that some of the products in question originated from the Philippines or China, TAA noncompliant countries. In particular, the proposed amended complaint provides import records from 2011 in which the country of origin is labeled as Taiwan, but the product description shows items with a PEZA label, indicating at least some part of the shipment originated from the Phillippines.

Defendant further takes issue with the failure of the complaint to allege an exact chain of sale, specifically the failure of the complaint to trace the alleged TAA noncompliant products

3

from 2011 to any government purchase. At this stage in the litigation, however, it is not necessary to provide the details of every single part of every single transaction during the alleged period of misconduct. As our court of appeals found, it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

The causality pled between the alleged TAA noncompliant products and those that were ultimately sold to the government, though weak, is nonetheless sufficient. In particular, the complaint now provides four import records from 2011 that show products allegedly originating from TAA noncompliant countries, such as the Phillippines (but shipped from Taiwan). It also provides details of hundreds of shipments from 2014 and 2015 received by defendant and shipped from Taiwan, as well as a list of products routinely included in such shipments that allegedly originated from China. Some of the listed products match up to those listed in the 2011 import records.

The complaint further provides a list of purchases made by the government of some of those same listed products. Defendant does correctly contend that the alleged TAA noncompliant items listed in the 2011 import records do not match any of the sales to the government listed in paragraphs 53 to 61 of the fourth amended complaint, and that the chain of causation is weak for the products in the 2011 import records because the alleged sale of those products occurred in 2015, nearly four years after Synnex imported the products. The alleged TAA noncompliant products from the 2014 and 2015 shipments do, however, match the sales to the government listed in paragraphs 53 to 61 as well as paragraph 64, which describes sales to the government similar to those described in paragraphs 53 to 61 and span from 2003 to 2018.

The proposed fourth amended complaint has thus pled with particularity that some TAA noncompliant products were included in shipments to Synnex even though records listed the country of origin as Taiwan, that Synnex received shipments from Taiwan that included some of the same products as those listed in the 2011 import records, and that the government purchased some of those products from Synnex.

4

As to defendant's contentions regarding Synnex's resellers, the complaint alleges that Synnex allows resellers to enter into teaming arrangements to sell products on GSA schedules. Many of these resellers have been identified as teaming partners by Synnex itself in its MAS 70 contracts. There is also no need for the complaint to allege Synnex submitted a claim to the government to violate the FCA as any person is liable when they "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Relator's motion for leave to amend is thus **GRANTED.**

### 2. OPEN MARKET SALES.

Defendant also takes issue with the complaint's additional allegations regarding sales between Synnex and various government departments for products such as the APC Smart-UPS products and AS400 cable bundles. Defendant argues these are open market sales and as explained in the Federal Acquisition Regulations and *United States v. Comstor Corp.,* acquisitions of open market items are generally only subject to the TAA if the value of the acquisition reaches a certain threshold. 308 F. Supp. 3d 56, 82 (D.D.C. 2018).

Open market sales are those that allow government agencies to purchase "items not on the Federal Supply Schedule." *Comstor,* 308 F. Supp. 3d at 84. All of the products at issue here including the APC Smart-UPS products and cable bundles are alleged to be listed on the GSA schedule (a federal supply schedule), and are thus not considered open-market items.

### 3. ORIGINAL SOURCE EXCEPTION.

Defendant argues again that the public disclosure bar precludes the fourth amended complaint. A previous order has already found that the even though the public disclosure bar applies because the instant action is substantially similar to two previous public lawsuits, the original source exception applies, subject to proof (Dkt. No. 114). Specifically, relator has offered proof that he, as an employee of a Synnex product reseller, knew that defendant had offered resellers substantial rebates and had discounted pricing on APC products and that it would affirmatively offer to swap out APC products when vendors had ordered similar products. Even though defendant correctly states that the complaint contains allegations based on information received from other sources, much of relator's primary allegations comes from

information he learned in the course of his employment and not primarily through piecing together public information to infer an FCA violation. *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1105 (9th Cir.) (finding original source exception did not apply when relator's primary firsthand knowledge was inference that the information available amounted to FCA violations).

## CONCLUSION

Relator's motion for leave to file a fourth amended complaint is **GRANTED**. Relator shall file a fourth amended complaint to the extent stated above as a separate docket entry by **DECEMBER 5 AT NOON**. The answer is due by **DECEMBER 30 AT NOON**.

**IT IS SO ORDERED.**

Dated: November 20, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE